Willis Lee JOHNSON, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.

No. 77–1721.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1978.

Decided Oct. 17, 1978.

Deborah Garton Gibson, Bluefield, W. Va. (Hensley & Muth, Bluefield, W. Va., on brief), for appellant.

Phillip I. Morse, Sp. Asst. U. S. Atty., Baltimore, Md. (John A. Field, III, U. S. Atty., Charleston, W. Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

■ Willis Lee Johnson appeals from an order of the district court affirming a decision of the Secretary of Health, Education and Welfare that he was not entitled to "black lung" benefits sought pursuant to Part B of the Federal Coal Mine Health and Safety Act of 1969, as amended (the Act), 30 U.S.C. § 901 *et seq.*, and the regulations promulgated thereunder. Our scope of review is confined to ascertaining whether the Secretary's denial was supported by "substantial evidence." If such support exists, we must affirm. If not, we must reverse, 30 U.S.C. § 923(b), *incorporating by reference* § 205(g) of the Social Security Act, 42 U.S.C. § 405(g); *see Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1968). In the instant case, we conclude that the Secretary failed to give proper consideration to certain evidence, and we must remand for further consideration.

There are three evidentiary items which were not given proper treatment:

1. X-ray of July 11, 1974;
2. Pulmonary function test of July 11, 1974;
3. Personal physical examinations.

*First*, the X-ray of July 11, 1974, was read as positive for pneumoconiosis by claimant's physician, but was not reread by the Secretary. Although the Secretary makes reference to this film, he concludes that "the consensus of medical opinion is that the X-ray evidence does not establish the existence of pneumoconiosis prior to July 1, 1973." Thus, the Secretary in effect ignored the film of July 11, 1974, and relied instead on other films which either had been read initially, or on rereading, as negative.

■ Congress has taken notice of the fact that negative X-rays are not conclusive indicators of the absence of pneumoconiosis. S.Rep.No.743, 92d Cong., 1st Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 2314, 2316. It is therefore highly conceivable that although the films relied upon by the Secretary were negative, the July 11, 1974, films could have been a positive indicator of pneumoconiosis. At least, the claimant should get the benefit that proper consideration of all the evidence, including this film, would provide. 30 U.S.C. § 923(b).

■ *Second*, the pulmonary function test of July 11, 1974, administered by Dr. Frank

T. Varney, rendered values which, if related back to June 30, 1973, could have qualified claimant for benefits under the interim regulations. 20 C.F.R. § 410.490(b). However, the Secretary discounted the results of this test on the basis of a report from Dr. Harold I. Passes which read in pertinent part:

I have further examined later reports . . . at which time an F.E.V.$_1$ value was recorded as 2.4 liters with an M.V.V. of 78 liters per minute, and I note that in the accompanying tracings there is no reproducibility of the study, and therefore, no conclusion can be made that the tests are valid or that they are reliable.

A review of the record, briefs and oral arguments does not reveal exactly what Dr. Passes meant by "reproducibility," and how he came to this conclusion. Additionally, Dr. Varney did not reveal the calculations upon which he based his test findings for forced expiratory volume per second, one of the criteria measured in a pulmonary function test. On remand, Dr. Varney should be given the opportunity to explain specifically how he obtained the various values in the pulmonary function test, and if the experts who might review the test at the request of the Secretary do not concur in its validity, they should explain in detail, and not in conclusory terms, why the test is not valid.

■ *Third*, the record contains results of two personal physical examinations administered on October 30, 1972, and on November 7, 1973. The first examination revealed some signs of respiratory impairment,[1] as did the second examination. More importantly, Dr. M. S. Wells, who conducted the second examination, stated that plaintiff was suffering from a chronic obstructive pulmonary disease, that plaintiff was disabled and unable to perform sustained work or to work in a dusty environment. Although the Secretary recognized that several physical examinations were conducted, he stated that "there is no evidence of a severe respiratory impairment." This suggests

that the Secretary may not have considered the report of Dr. Wells in contravention of his duty to consider all of the evidence as required by 30 U.S.C. § 923(b).

This case must be remanded to the Secretary for further consideration of the claim and with directions to properly consider all the evidence submitted by the claimant. Furthermore, although some of the evidence discussed in this opinion was obtained in tests conducted after the June 30, 1973, cutoff date, it is now well established in this circuit that the Secretary must consider post-cutoff date evidence and indicate the weight it is given. *Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977); *Arnold v. Secretary of Health, Education and Welfare*, 567 F.2d 258 (4th Cir. 1977).

*REMANDED.*

---

1. The doctor's report stated:
   The percussion note was resonant over both lungs. Auscultation revealed an occasional coarse rale, most all of which disappeared following cough.